UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

OLUJIMI AWABH BLAKENEY,

Petitioner,

v.

DONALD HOLBROOK,

Respondent.

CASE NO. 3:16-CV-05426-RBL-DWC

REPORT AND RECOMMENDATION

Noting Date: November 18, 2016

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Olujimi Awabh Blakeney filed his federal habeas Petition on June 1, 2016, pursuant to 28 U.S.C. § 2254, seeking relief from a state court conviction. *See* Dkt. 1. The Court concludes Petitioner failed to properly exhaust his state court remedies as to all grounds raised in the Petition. Because Petitioner would be precluded from pursuing state remedies, Petitioner has procedurally defaulted on the grounds raised in the Petition. Therefore, the Court recommends the Petition be dismissed.

## BACKGROUND

### I.      Factual Background

The Court of Appeals of the State of Washington summarized the facts of Petitioner's case as follows:

> On a July 2010 evening, Blakeney was with Manuel Castillo, Herman Jackson, and Castillo's fiancee and mother of his child, Christina Roushey. That night, Blakeney, an African American, wore a black hooded sweatshirt; Castillo, a light-skinned Native American, wore a red shirt. Roushey received text messages from acquaintance Jordan Kudla that led Castillo to believe that Kudla was threatening Roushey and their daughter. In response, Castillo wanted to fight Kudla.
>
> Jackson drove Blakeney and Castillo to Kudla's neighborhood, and Jackson stayed with the vehicle while Castillo went to fight. Blakeney remained seated in the front passenger seat. Castillo and Kudla began wrestling and their fight caused a neighborhood commotion, leading Kudla's mother; April Kudla, and others to come outside.
>
> April Kudla approached the fight with a baseball bat to break it up, but Blakeney confronted her and asked if she planned to hit his "little homie with that bat." Blakeney pointed a gun at her, and then raised it skyward, firing two shots.
>
> After firing, Blakeney ran to the front passenger side of Jackson's car. April Kudla hit both Jordan Kudla and Castillo with the bat until they released one another; then Castillo ran to the rear driver's side of Jackson's car.
>
> Seconds after Jackson, Castillo, and Blakeney returned to the car and Jackson pulled the car away, shots were fired from the vehicle's passenger side. One of these shots fatally struck Lisa Melancon, a neighborhood resident, killing her almost instantly.
>
> Witnesses identified the shooter as Blakeney, or someone matching Blakeney's description. Castillo and April Kudla both testified that Blakeney fired the fatal shots. Jordan Kudla, Amie Hieronymus, Austin Frederick, and Joe Melancon all witnessed the shots being fired by someone wearing a black top, consistent with the black hoody that Blakeney wore that night. Jackson also testified that he heard Blakeney fire the shots from the car's passenger side.
>
> After the shooting, Blakeney moved to California. He told his roommates that he had shot and killed someone in Washington and that he had disposed of the gun in a Washington river.

1

2       The State charged Blakeney with first degree murder by extreme indifference to
        human life, drive-by shooting, first degree unlawful firearm possession, and
3       second degree assault. The State reduced Castillo and Jackson's charges in
        exchange for their testimony at Blakeney's trial.

4       Before trial, Blakeney moved to compel discovery of the jail phone recordings of
        his codefendant witnesses, Castillo and Jackson. Blakeney believed these
5       recordings were material because during the conversations, Jackson and Castillo
        spoke with family members about their plea agreements. The trial court denied
6       the motion to compel, explaining that Blakeney failed to make a sufficient
        showing of materiality to justify the production of these recorded conversations.

7       Also, the parties agreed to present the jury venire with questionnaires, believing
        the questionnaires may aid in jury selection. The parties then used these
8       questionnaires to individually question certain venire members in open court,
        outside the presence of other potential jurors.

9

10      At trial, witnesses testified that after the shooting, Blakeney moved to California.
        He told one of his roommates, Ron Nocera, about the events surrounding the
11      shooting; and, Blakeney admitted that he had shot in Melancon's direction as the
        car pulled away. Another roommate, Alijah Nocera, testified that Blakeney told
12      him that he had shot the victim and then disposed of the gun near a river. Finally,
        a third roommate, Mark Smith, testified that Blakeney confessed that he had shot
13      from a car and killed someone before throwing the gun in a river.

14      Blakeney cross-examined Castillo and asked if Castillo''s plea agreement required
        him to submit to polygraph examinations if the State requested. He responded
15      affirmatively. Blakeney then asked whether Castillo had undergone any
        polygraphs, and Castillo responded negatively. In rebuttal, the State called
16      Castillo's attorney, Michael Schwartz, to testify that the polygraph provision was
        an investigatory tool and an incentive to the defendant to refrain from
17      "untruthfulness," and also that polygraph results are inadmissible at trial. Before
        Schwartz testified, the trial court read the jury a limiting instruction detailing the
18      scientific dispute over polygraph reliability, and the instruction explained that
        polygraphs are not generally admissible in court; but, the instruction noted that
19      the State commonly uses polygraphs as investigative tools. Finally, the trial court
        instructed the jury that it "may consider its use or nonuse here in evaluating the
20      investigation conducted in this case. You may not use the polygraph testimony for
        any other purpose." As part of the final instructions, the trial court gave
        instruction 15, defining "reckless." Blakeney did not object to this instruction.
21

22      On July 20, 2011, the jury convicted Blakeney on all counts. At an August 3
        sentencing hearing, Blakeney argued that his first degree murder and drive-by-
23      shooting convictions constituted same criminal conduct for sentencing purposes.
        The trial court disagreed.

24

1  *State v. Blakeney*, 175 Wash. App. 1010 (2013) (internal citations and footnotes omitted).

2  **II.     Procedural Background**

3       Petitioner challenged his Pierce County Superior Court convictions and sentence on direct

4  appeal, raising six grounds for relief.[1] Dkt. 16, Exhibits 3, 5, 6. The Court of Appeals of the State

5  of Washington affirmed Petitioner's convictions and sentence. Dkt. 16, Exhibit 2. Petitioner filed a

6  motion for reconsideration, which was denied. Dkt. 16, Exhibits 7, 8. Petitioner moved for an

7  extension of time to file a petition for review with the Washington State Supreme Court. Dkt. 16,

8  Exhibit 9. Prior to ruling on the motion for extension of time, the state supreme court instructed

9  Petitioner to file a proposed petition for review. Dkt. 16, Exhibit 10. Petitioner filed the proposed

10  petition for review and, on December 11, 2013, the Washington State Supreme Court denied

11  Petitioner's motion for extension of time to file a petition for review.[2] Dkt. 16, Exhibit 12. The

12  state supreme court did not reach the merits of Petitioner's proposed petition for review. On

13  December 19, 2013, the state court of appeals issued its mandate. Dkt. 16, Exhibit 13.

14  *See* Dkt. 21, Exhibits 6, 7.

15       Petitioner filed his first personal restraint petition ("PRP") seeking state post-conviction

16  relief on October 2, 2012.[3] Dkt. 16, Exhibits 14, 15. Petitioner's first PRP was dismissed by the

17  Court of Appeals for the State of Washington. *See* Dkt. 16, Exhibit 17. Petitioner did not seek

18  _____

19  [1]On direct appeal, Petitioner raised the following grounds: (1) the prosecutor improperly vouched for a
    state witness' credibility when he elicited testimony regarding a polygraph provision in the witness' plea agreement;
20  (2) summarily sealing the juror questionnaires violated Petitioner's right to a public trial and open court records; (3)
    the trial court abused its discretion when it denied Petitioner discovery material and denied him the right to
    subpoena the materials; (4) the trial court erred when it did not apply the same criminal conduct to Petitioner's
21  sentence for murder in the first degree and drive-by shooting; (5) jury instruction #15 lowered the state's burden of
    proof requiring reversal of the drive-by-shooting count; and (6) Petitioner was denied his constitutional right to
22  effective assistance of counsel when his attorney agreed to the inadequate "reckless" jury instruction. Dkt. 16,
    Exhibits 3, 5, 6.
       [2]In his proposed petition for review, Petitioner alleged: (1) the accumulative error doctrine effected the
23  outcome of the case; (2) improper vouching; (3) evidentiary errors; (4) invalid jury instruction; and (5) ineffective
    assistance of counsel. Dkt. 16, Exhibit 11.
       [3] Petitioner moved to terminate his legal financial obligations. Dkt. 16, Exhibit 14. The superior court
24  transferred the motion to the state court of appeals for consideration as a PRP. *See* Dkt. 16, Exhibit 15, 16.

REPORT AND RECOMMENDATION - 4

1    review by the state supreme court and the Court of Appeals for the State of Washington issued a

2    certificate of finality, stating the decision became final on August 6, 2013. Dkt. 16, Exhibit 18.

3         On December 8, 2014, Petitioner filed his second PRP.[4] Dkt. 16, Exhibit 19. Petitioner's

4    second PRP was transferred to the state supreme court and, on April 13, 2016, the state supreme

5    court dismissed Petitioner's second PRP. Dkt. 16, Exhibit 21, 22. The state supreme court issued a

6    certificate of finality on June 15, 2016. Dkt. 16, Exhibit 23.

7         On June 1, 2016, Petitioner filed the Petition raising the following four grounds: (1) the

8    trial court erred when it denied Petitioner's motion to compel the state to obtain jail phone call

9    recordings of Petitioner's co-defendants; (2) prosecutorial misconduct occurred when the

10   prosecutor vouched for Petitioner's co-defendant's credibility; (3) the trial court erred when it did

11   not treat the first degree murder and drive-by shooting convictions as the same criminal conduct;

12   and (4) prosecutorial misconduct occurred when the prosecutor used altered evidence during

13   closing statements. Dkt. 6.

14        Respondent maintains Petitioner failed to exhaust Grounds 1 – 4, and these grounds are

15   now barred from federal review. Dkt. 15. Respondent served the Answer on Petitioner on

16   September 2, 2016. *Id*. at p. 24. Petitioner did not file a response.

17                          EVIDENTIARY HEARING

18        The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro*

19   *v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

20   _____

21        [4] In his second PRP, Petitioner alleged his counsel was ineffective when he failed to: (1) provide a defense;
     (2) object to jury instruction number 15; (3) object to and raise prosecutorial misconduct in shifting the burden of
22   proof to Petitioner during closing statements; (4) object to the prosecutor's flagrant and highly prejudicial
     PowerPoint presentation during closing statements and move for a mistrial; (5) object to jury instruction number 11;
23   (6) request a jury instruction in relationship to the assault in the second degree on defense of another; (7) request a
     jury instruction on "unlawful display of a deadly weapon" as a lesser included offense; (8) request a jury instruction
24   for manslaughter in the second degree; and (9) request a jury instruction for murder in the second degree as a lesser
     included offense. Dkt. 16, Exhibit 19.

could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Cullen*, 131 S.Ct. 1388. The Court finds it is not necessary to hold an evidentiary hearing in this case because Petitioner's claims may be resolved on the existing state court record.

## DISCUSSION

### I.      Exhaustion of State Remedies

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state Supreme Court even though the state court did not reach the argument on the merits). A federal claim is "fairly and fully" presented to the state courts if the claim is presented "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for

the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir.2005) (internal citations omitted).

It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (*citing Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay*, 403 F.3d at 668. Petitioner bears the burden of proving he has exhausted available state remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

A.  Grounds 1 – 3

In Ground 1, Petitioner alleges the trial court erred when it denied his motion to compel the state to release jail phone call recordings of Petitioner's co-defendants. Dkt. 6, p. 5. In Ground 2, Petitioner alleges prosecutorial misconduct occurred when the prosecutor vouched for a co-defendant's credibility. *Id*. at p. 7. In Ground 3, Petitioner alleges the trial court erred when it did not treat Petitioner's first degree murder and drive-by shooting convictions as same criminal conduct for sentencing. *Id*. at p. 8.

Petitioner raised these three grounds on direct appeal. Dkt. 16, Exhibits 3, 5. Petitioner, however, never filed a petition for review with the state supreme court. He filed a motion for extension of time to file a petition for review and a proposed petition for review. *See* Dkt. 16, Exhibits 9, 10, 11. The state supreme court denied Petitioner's motion for extension of time and did not make any ruling on the proposed petition. *See* Dkt. 16, Exhibit 12. The record does not reflect the proposed petition for review was ever accepted as a petition for review by the state supreme court.

As Petitioner's proposed petition for review was not accepted by the state supreme court, he did not file a petition for review. Therefore, he did not exhaust each level of his direct appeal. *See Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992) (finding claims were unexhausted when they were not raised on every level of direct review); *Collick v. Gilbert*, 2014 WL 3847887, 5-6 (W.D. Wash. Aug. 4, 2014) (finding the petitioner failed to present any grounds to the state supreme court when he did not file a motion for discretionary review after his motion for extension of time was denied); *Coleman v. Quinn*, 2006 WL 3254500, *4 (W.D. Wash. Nov. 8, 2006) (finding a motion for extension of time filed with the highest state court did not exhaust the grounds for relief). Petitioner did not raise Grounds 1 – 3 in his PRPs. *See* Dkt. 16, Exhibits 14, 19. As Petitioner did not give the state court a full and fair opportunity to determine if a federal constitutional violation occurred, Grounds 1 – 3 were not properly exhausted.

B.  Ground 4

In Ground 4, Petitioner alleges prosecutorial misconduct occurred when the prosecutor used altered evidence during his closing statement. Dkt. 6, p. 10. Petitioner did not raise Ground 4 on direct appeal or in the PRPs. *See* Dkt. 16, Exhibits 3, 5, 6, 14, 19. Therefore, Petitioner did not give the state court a full and fair opportunity to determine if a federal constitutional violation occurred. Accordingly, Ground 4 was not properly exhausted.

**II.      Procedural Default**

The grounds raised in the Petition are also procedurally defaulted. Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal claim when it is clear the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear the state court would hold the claim procedurally barred. *Id.* at 1230-31 (citations omitted). If a state procedural rule would now preclude the petitioner from raising his

1    claim at the state level, the claim is considered "procedurally defaulted" and the federal courts are

2    barred from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32

3    (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

4         Grounds 1 – 4 are procedurally defaulted because if Petitioner attempted to present these

5    claims in a subsequent PRP, the state court would find the claims barred by Washington State law.

6    Washington State imposes a one-year statute of limitations on filing a PRP or other post-conviction

7    challenges. RCW § 10.73.090. The Court of Appeals for the State of Washington issued a mandate

8    finalizing Petitioner's state appeal on December 19, 2013. Dkt. 16, Exhibit 13. The time to file a

9    petition or motion for post-conviction relief expired December 19, 2014, one year after Petitioner's

10   direct appeal became final. *See* RCW 10.73.090(1), (3)(b). As the one year statute of limitations

11   has passed, Petitioner is barred from filing a subsequent PRP in the state court asserting the

12   grounds raised in the Petition. *See id*.

13        Further, Petitioner has previously filed two PRPs and the state court of appeals will not

14   consider a successive petition unless Petitioner certifies he has not filed a previous petition on

15   similar grounds and shows good cause as to why he did not raise the grounds in the previous

16   PRP. RCW 10.73.140. Petitioner has not presented facts which could show good cause for his

17   failure to raise Grounds 1 – 4 in his PRPs. Therefore, the grounds raised in the Petition are also

18   subject to an implied procedural bar because these grounds would be prohibited by an

19   independent, adequate, and mandatory rule of state procedure, R.C.W. § 10.73.140, making a

20   return to state court futile. *See Bolar v. Luna*, 2007 WL 1103933, *11 (W.D. Wash. April 10,

21   2007).

22        As Petitioner would be precluded from asserting Grounds 1 – 4 in the state court, these

23   grounds are procedurally defaulted in federal court. *See Coleman*, 501 U.S. at 731-32, 735 n.1;

24

REPORT AND RECOMMENDATION - 9

*Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004); *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim.").

The procedural default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (*citing Coleman*, 501 U.S. at 750). To establish "cause," a petitioner must show some objective factor external to the defense prevented him from complying with the state's procedural rule. *Coleman*, 501 U.S. at 753 (*citing Murray v. Carrier,* 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause and prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Murray,* 477 U.S. at 495–96. To demonstrate he suffered a fundamental miscarriage of justice, viewing all the evidence in light of new reliable evidence, the petitioner must show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (*citing Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

1    Here, Petitioner fails to show some objective factor external to his defense prevented him

2    from complying with the State's procedural bar rule. Petitioner also fails to show the alleged trial

3    errors worked to his actual and substantial disadvantage, infecting his entire trial with errors of

4    constitutional dimensions, and thus has not shown prejudice. Furthermore, Petitioner has not

5    provided new, reliable evidence showing he is actually innocent, and therefore this is not the kind

6    of extraordinary instance where this Court should review the claim despite the absence of a

7    showing of cause. Petitioner failed to show cause or prejudice to excuse his procedural default;

8    therefore, the Court is barred from reviewing Grounds 1 – 4 on the merits. Accordingly, the

9    undersigned finds Petitioner is not entitled to relief as to Grounds 1 – 4 and recommends the

10   Petition be dismissed. *See Casey*, 386 F.3d 896.

11                                 CERTIFICATE OF APPEALABILITY

12    A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

13   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

14   (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may

15   issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional

16   right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of

17   reason could disagree with the district court's resolution of his constitutional claims or that jurists

18   could conclude the issues presented are adequate to deserve encouragement to proceed further."

19   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

20   (2000)).

21    No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

22   would conclude the issues presented in the Petition should proceed further. Therefore, the Court

23   concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

24

CONCLUSION

For the above stated reasons, the Court recommends the Petition be dismissed. No evidentiary hearing is necessary and a certificate of appealability should be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on November 18, 2016, as noted in the caption.

Dated this 27th day of October, 2016.

David W. Christel
United States Magistrate Judge